All right, you may proceed. Good morning, may it please the court, Jonathan Burke for Appellant Sigitas Raulinaitis. This case is relatively straightforward. Plaintiffs sought a license necessary to exercise a fundamental right. The only way to exercise that right in the state of California is with such a license. It's set forth in the complaint, it was denied, and the turning point was a discretionary definition by an elected sheriff that far exceeds anything recognized under the law or even jurisprudence as to voter registration or state registration as a resident. And as a result, over a year later and after two months of surveillance, plaintiff was denied the license necessary to exercise the fundamental right recognized by our Supreme Court in McDonald. And I think that's really the case in a nutshell. Well, the whole case turns on the definition of resident and whether the Ventura County Sheriff's Department is entitled to any deference in its interpretation of the term resident, right? Well, allow me to address that issue directly. The sheriff, as an elected official, first of all, as soon as he goes beyond state law requirements, is exercising discretion. And in this case, they claim of unfettered discretion to determine who's entitled to a license necessary to exercise a fundamental right. And I think every court in this nation has said that's not an appropriate exercise of discretion by an elected official when we're talking about a fundamental right. Well, it wasn't just an arbitrary exercise, I mean, an arbitrary decision just not to give your client a license. He was interpreting the definition of the word resident. If he had determined your client was a resident of Ventura County, then he would have been entitled to the license, right? Except that his definition far exceeds the legal requirements. If we take in the first place what the state of California recognizes as your residence for purpose of applying for voter registration, it is literally the park you slept in the night before if you are homeless. Here, it was undisputed that plaintiff's registered address with the state of was Ventura County at the time the motion was decided. He owned property that he did reside in at the time. The sheriff's definition goes far in excess and says, actually, you have to spend the majority of your time in my county. If you don't, even though you might be a resident, you might be a domiciliary, but say you work overseas, you're still a California resident in that county for all purposes recognized under the law, but you would not fall under the sheriff's definition because you haven't spent the majority of your time there. And so he's going to devote two months of law enforcement resources to see where you're spending your time, not where your legal definition is, not where your voter registration is, but how are you spending your time? And that is a discretionary standard he has created far in excess of any legal authority. So, counsel, go ahead. Go ahead. Well, what I wondered was on your statement that that he had a fundamental right infringed. Yes. My question is this. If a fundamental rights infringed, that may heighten the standard for reviewing what the sheriff department does. But what's the fundamental right to concealed carry? I thought that there was a Supreme Court case, my or one of our cases called Peruta that rejected the idea of a second amendment right to concealed carry. Respectfully, the Peruta decision did come to the decision that there was no right to concealed carry, but that's not the issue in this case. The Supreme Court has clearly stated there is a fundamental right to self-defense. Peruta did not address the issue of the right to self-defense. It simply said at the time Peruta was decided based upon the prior holdings and the development of that case, there was no specific right to concealed carry, specifically because plaintiff also had a right to open carry. But at the time this case was brought, no such right exists. And the California legislature and the courts have made it very clear that the only way this right can now be exercised under the current legislative scheme is with a license. There is no other alternative. And that's what is stated in the complaint and was accepted by the magistrate in this case. At the end of the day, wasn't the real question was whether he could carry a concealed weapon or not? The question is whether he could exercise his right to self-defense. If we characterize it as concealed carry, then this Court's precedent would say, well, you don't have a right to concealed carry, but then does that mean you have no right to self-defense, or is there an alternative means of exercising that right? There is no alternative means of exercising that right. Maybe I'm missing it, but he applied to get a concealed carry permit, right? He applied for a license. The only way to exercise his fundamental right in this state requires a license. It's the only way it can be exercised at the time this case was brought and today. You have to have this license or you are violating the law, period. So, under your definition of resident, would he be entitled to get concealed  carry? Absolutely not. He had originally resided in Los Angeles County, and there is a prior matter where he applied for a license and was denied on other grounds. He subsequently moved to Ventura, registered to vote, changed his address with the DMV, took up residence and lives there, spent the night there last night. And it became his residence. After moving, he applied for a license. He was denied because when they conducted surveillance, two months of it, they found that some nights he didn't sleep in that again, far exceeds any legal standard recognized by this court for residence or any California court for residence or domicile. You can even go a step further. If we apply the domicile standard, the sheriff's test still exceeds that, requiring you to spend a majority of your time in his county. Otherwise, no. So, he's left without any option if the sheriff's definition is applied, if he stays in any other home or if he travels. I have three minutes remaining, if I may reserve that time. Yes, you may. Thank you. Thank you. May it please the court, Marina Porsche for the Ventura County Sheriff's Department. Before I begin, I wish to address a point that my colleague made. He said that the applicant had a Ventura County driver's license, not at the time that the sheriff was investigating the application. The applicant had a driver's license at that time out of a Burbank address in Los Angeles County. And that's attested to in the declaration of the sheriff investigator in the supporting papers. I don't believe this case presents a viable 1983 cause of action, because under Peruta and this circuit's binding precedent, there is no Second Amendment right to carry a concealed weapon. And the applicant has applied for a license to carry a concealed weapon. The applicant very much disputes the sheriff's application of the residency requirement, a state law requirement. But that state law requirement on its own without a Second Amendment nexus does not make a viable Section 1983 claim. Well, how have other sheriff's departments interpreted the term resident in Cal County Penal Code 26-150? The sheriff's definition of residency is the county in which the person spends the most of his or her time and conducts most of his or her activities. That definition is akin to the concept of domicile. The California legislative history of the 1969, the legislator added a residency requirement. They wanted to prevent shopping around for CCW licenses. And they wanted to make sure that an applicant applied in the county where they primarily lived, where they had the most established and permanent connection, where the local law enforcement official reviewing the application would know of the applicant's reputation and conduct and review. For public safety reasons, the California District Attorneys, the Peace Officers Association, the California AG all wrote Governor Reagan and expressed their desire to put an end to shopping around for CCW licenses. Here we have an occasion where the applicant was denied after applying in L.A. County, where at that time he had to present himself as an L.A. County resident, and then attempted an application in Ventura County. There are multiple factors reviewed by the district court that established that the applicant was not, in fact, a Ventura County resident. In his declarations to the court, between the first and the second summary judgment motions, the applicant's definition of his residency flip-flopped. At first, in his first declaration, he said there was no county where he spent the majority of his time, and that he had homes in, you know, multiple counties, including Oxnard. By the time of the second declaration, he attested that it was his intention to permanently reside in Ventura County, but he didn't explain any underlying facts that supported that. And when the district court, on the district court's own motion, did a little bit of internet sleuthing, the district court found that the applicant had put the Oxnard condo, which was the residential nexus for his Ventura County claim to residency, up for sale on, you know, six various real estate websites. You're saying the district court went on the internet and searched for the state of the condo on his own, her own? I don't know who the district court judge was. I'm sorry, Your Honor, I didn't quite hear your question. Did you just say that the district court judge went on the internet to determine the status? Oh, it was a magistrate judge, I guess. Magistrate Judge Nagel, is that correct? Yes, Your Honor, it's in a footnote by the magistrate judge that she conducted her own internet research, and that was part of her opinion of the case. Okay, I must have missed that before. It's reflected in the magistrate judge's statement that the condo had been put up for sale. I wouldn't rely on that argument too heavily. Okay. Other factors that show that the applicant was not an L.A. County resident was, in addition to his L.A. County driver's license at the time of the sheriff's investigation, he had four vehicles. So the term resident is ambiguous. It could mean various things, right? That's why I was asking you, how did the other sheriffs interpret it, or is there any case law in it in one particular way? The sheriff didn't exercise unfettered discretion in... I'm not asking you that. I'm asking you, is there any state law that interprets resident? Is there any written policy of the other sheriffs that interpret the word resident in the statute? Anything that we can, there's guidance to have. The court can look to the binding stipulation of the parties introduced into the lower court, which the court took as evidence of what the sheriff's policy was, and that the applicant did not meet the sheriff's policy. The court can also look at the California case law, which finds that the term resident is generally synonymous with domicile. And the court can look at multiple California statutes, which also find that resident is used akin to the concept of domicile. The court can consider more than just the election code provision, which is the only statutory provision that the applicant's hanging their hat on here. Is there any evidence anywhere that all the sheriffs in California look at the rule the same way? I don't have the answer to that question, Your Honor. It wasn't in the record below, but the California courts generally find that the term resident, when used in family law disputes for divorce and that sort of thing, has been applied to meaning domicile, the primary location where you reside. Here it would be against the public policy purpose of the legislature, adding the residency requirement to allow an applicant to apply in a county where they only have a tenuous connection, where the sheriff Judge Gould, if I can interject a question. When we review what the sheriff's department did in determining residency, are we just supposed to ask ourselves if there was a rational basis for the sheriff's approach, or is there a more heightened standard because of the Second Amendment argument? Under this circuit's past cases, the court asks itself, is their conduct protected by the Second Amendment as the first order inquiry? And if so, what is the appropriate standard of review? Here, since the application is to carry a concealed weapon and the circuit has found that there is no Second Amendment right to carry a concealed weapon in public, I would respond to your question that you don't even pass the first hurdle of conduct protected by the Second Amendment pursuant to the Peruta decision. But if you could get through that hurdle, the majority of the Ninth Circuit cases that have looked at the regulation of rights under the Second Amendment have applied intermediate scrutiny. And they ask, is there a substantial, significant, or important interest, and how would that be? I understand that, but I don't think you really answered my question. If we assume that there's no Second Amendment right because of Peruta, do we review for a rational basis? Your Honor, the plaintiff has brought a 1983 claim premised on the nexus with a Second Amendment right. If there's no federal, statutory, or constitutional interest at stake, then the plaintiff cannot proceed with a Section 1983 claim based solely on state law under Galen v. the City of Los Angeles. Okay. Now, does Peruta mean that this applicant had no right of self-defense that would permit his claim? Peruta only addressed concealed, the carry of concealed weapons in public. That's as far as Peruta went. The applicant has a Second Amendment right to self-defense in the home under Heller and McDonald. Peruta did not encroach upon that, nor could it. Within California, other than exercising a right of self-defense to the carry of a concealed weapon, all California law-abiding residents can use non-lethal weapons, less lethal weapons, weapons such as stun guns, tasers, tear gas. Those are all available mechanisms under the Second Amendment, even if there is no Second Amendment right to carry a concealed weapon in public. Okay. Thank you. All right. Thank you, Kel. Does anyone have any further questions? Not here. All right. You're over your time, so thank you very much. Thank you. Thank you. If I may, I would just like to clarify two points. Appellant does not dispute state law residency requirements, and you could even apply a domicile requirement that would be consistent with the legislative history. What the sheriff has done goes far beyond that, far beyond that. As you heard counsel state, you have to spend the majority of your time, conduct the majority of your activities in that county. That's not what state law says. That's not what any history of jurisprudence in this state or this circuit says the requirement for residency or domicile is. The sheriff has gone far beyond that in exercising unfettered discretion. The second point I wanted to make is, if you follow PERUDA, you are, in fact, imposing an outright ban on the exercise of the right of self-defense in the state. PERUDA, at the time it was filed, dealt with a number of other issues, and the right to open carry existed. The legislature has since abolished that right. At the time this case was filed, and as accepted in paragraph one, there's only one way you can exercise your right to self-defense in this state, and that's with a license. Plain and simple. So we also know from fundamental right jurisprudence that you cannot give an elected official unfettered discretion to decide. What about self-defense in public or self-defense in one's home? I believe when the Supreme Court said to wear or bear arms was covered under the Second Amendment right, that is self-defense. Self-defense applies everywhere. And I think we just saw a unanimous court of eight affirm that in the Catano decision, talking about the right of self-defense and possession of weapons commonly recognized. If Ventura County Council is saying self-defense can be done with stun guns, then I believe all the sheriff's deputies should have their guns taken away, and they should be forced to use stun guns as well. We have a modernly accepted standard, and unfortunately it's applied in different ways across this state. A majority of county sheriffs in this state are shall issue. If you are a law-abiding citizen, they accept self-defense as a standard, and you are issued a permit. There are no further questions. What we are faced with here is a sheriff who's gone much further. Literally two months of time conducting surveillance. Imagine if this were a license to marry. Well, we need you to prove you really love this person. We're going to follow you for two months, and we're going to make you wait a year, and then we're going to deny you based on our own definition, even though you comply with all of the state law. And our state law is you can register to vote, and your domicile is the park you slept in last night, period. Yes, Your Honor. Is there any evidence that he defines this the same as other sheriffs or different than other sheriffs? There's no evidence of that. And, in fact, what we do know from across the state is that a majority of the sheriffs are freely issuing without problem, without further litigation. You're not saying people in Ventura don't get these permits, are you? The sheriff exercises a great deal of discretion in his issuance policy that is more severe than most of the other jurisdictions and uses various reasons to do that. But, generally speaking, he does issue, if you meet all of his definitions and his discretionary decision to issue you a permit, if he deems you worthy. All right. Any further questions? No question here. Thank you, counsel. Are you both from Ventura? Are you both from Ventura? Los Angeles. Los Angeles. Did you have to go through the fires? I'm just wondering if you had to come through the fires to get here today. Oh, yes. All right. Thank you. This case will be submitted.
judges: Wardlaw, Gould, Collins